2013-1347

---

## United States Court of Appeals
## for the Federal Circuit

---

**BOSE CORPORATION**

Plaintiff-Appellant,

**v.**

**SDI TECHNOLOGIES, INC.**

Defendant-Appellee,

**and**

**IMATION CORPORATION, MEMOREX PRODUCTS, INC., and D.P.I., INC.,**

Defendants-Appellees,

**and**

**3XM CONSULTING, LLC,**

Defendant.

---

Appeal from the United States District Court for the District of Massachusetts in case no. 09-CV-11439, Judge William G. Young.

---

## REPLY BRIEF FOR PLAINTIFF-APPELLANT
## BOSE CORPORATION

---

Mark J. Hebert
Jolynn M. Lussier *(of counsel)*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

October 28, 2013

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iv

SUPPLEMENTAL STATEMENT OF RELATED CASES ............................ vii

SUMMARY OF THE REPLY ............................................................... 1

REPLY ARGUMENT .......................................................................... 3

I.      The *Interface* Should Be Construed To Not
Require A Digital-To-Analog ("D/A") Converter ........................... 3

      A.      Appellees Implicitly Concede That The
Claims Support A Construction of *Interface*
That Does Not Require A D/A Converter .......................... 3

      B.      The Specification Does Not Support The
District Court's Construction .................................................. 4

              1.      The Specification Demonstrates That The Preferred
Embodiment Was Not Intended To Be Limiting ......... 4

              2.      The Figure 1 Embodiment *Does*
Include An "Interface" .................................................. 5

      C.      The Prosecution History Does Not Support
The District Court's Construction .......................................... 6

      D.      Appellees' Arguments About Claims 24
and 29 Are Unavailing ........................................................ 10

              1.      Claim 24 Is Not "Fatally Defective" ......................... 10

              2.      Claim 29 Does Not Support Appellees'
Argument ..................................................................... 12

i

E. The Extrinsic Evidence Does Not Support
The District Court's Construction..........................................13

   1. The Term *Interface* Is Not Well
Recognized To Require Conversion............................13

   2. Bose's Prosecution Of A Continuation
Application Does Not Support
Appellees' Argument...................................................14

   3. The Wave/PC Product Does Not
Support Appellees' Argument.....................................15

   4. Other Extrinsic Evidence Also Does
Not Support Appellees.................................................15

II. *Interface Unit/Device/Module* Should Not Have Been
Construed To Require A "Singularly Physical" Structure..............16

A. The Issue On This Limitation Is One Of Derivative
Claim Construction ..............................................................16

B. The Intrinsic Record Does Not Support The
District Court's Derivative Claim Construction...................17

C. Appellees And Their Expert Both Understood
That *Interface Unit/Device/Module* Are Not
Inherently Unitary Structures................................................19

D. Claim 37 Supports That *Interface Unit/Device/Module*
May Be Non-Unitary ............................................................20

E. Summary Judgment Should Have Been Denied
Because Appellees' Common Products Each
Include An *Interface Unit/Device/Module* ..........................22

III. Material Fact Issues Exist As To Indirect Infringement.................24

A.   Indirect Infringement Does Not Require Bose Prove
     Belief In The Patent's Validity ...............................................24

B.   Appellees' Intent As To Contributory Infringement Is
     Presumed, Which Appellees Fail to Address .......................25

C.   Genuine Issues of Disputed Material Fact Remain
     Regarding Induced Infringement .........................................26

     1.   Evidence Of SDI's Intent To Induce
          Infringement ................................................................26

     2.   Evidence Of Imation's Intent To Induce
          Infringement ................................................................29

     3.   Evidence Of DPI's Intent To Induce
          Infringement ................................................................31

D.   Bose Has Not Waived Any Issue By Appealing
     The District Court's Summary Judgment
     Ruling.....................................................................................33

CONCLUSION .................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Advanced Fiber Tech. Trust v. J&L Fiber Serv., Inc.,*
  674 F.3d 1365 (Fed. Cir. 2012) ........................................................ 17, 18

*Advanced Software Design Corp. v. Fiserv, Inc.,*
  641 F.3d 1368 (Fed. Cir. 2011) ........................................................ 27, 30

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ........................................................................ 28

*August Tech. Corp. v. Camek, Ltd.,*
  655 F.3d 1278 (Fed. Cir. 2011) .......................................................... 5

*Broadcom Corp. v. Emulex Corp.,*
  No. 2012-1309 (Fed. Cir. Oct. 7, 2013) .............................................. 4

*CCS Fitness, Inc. v. Brunswick Corp.,*
  288 F.3d 1359 (Fed. Cir. 2002) ........................................................ 17, 18

*Commil USA, LLC. v. Cisco Systems, Inc.,*
  720 F.3d 1361 (Fed. Cir. 2013) ........................................................ vii, 24

*Cordis Corp. v. Boston Scientific Corp.,*
  658 F.3d 1347 (Fed. Cir. 2011) ........................................................ 17

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
  424 F.3d 1293 (Fed. Cir. 2005) .................................................... 17, 18, 19

*Edwards Lifesciences LLC v. Cook Inc.,*
  582 F.3d 1322 (Fed. Cir. 2009) ........................................................ 17

*Finnigan Corp. v. Int'l Trade Comm'n,*
  180 F.3d 1354 (Fed. Cir. 1999). ....................................................... 17

iv

*Garside v. Osco Drug, Inc.*,
  895 F.2d 46 (1st Cir. 1990) .................................................................. 28

*Giannullo v. City of New York*,
  322 F.3d 139 (2d Cir. 2003) ................................................................ 28

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S.Ct. 2060 (2011) ........................................................................ 27

*Goguen v. Textron, Inc.*,
  234 F.R.D. 13 (D. Mass. 2006).............................................................. 28

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2:07-CV-00331,
  2013 WL 4458754 (D. Nev. Aug. 16, 2013) ......................................... 24

*Hoffer v. Microsoft Corp.*,
  405 F.3d 1326 (Fed. Cir. 2005) ........................................................... 10

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*,
  540 F.3d 1137 (Fed. Cir. 2008) ........................................................... 16

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) ........................................................... 17

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
  672 F.3d 1350 (Fed. Cir. 2012) ........................................................... 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)............................................................................. 25

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................ 10

*Pozen Inc. v. Par Pharm., Inc.*,
  696 F.3d 1151 (Fed. Cir. 2012) ............................................................. 6

*Praxair, Inc. v. ATMI, Inc.*,
  543 F.3d 1306 (Fed. Cir. 2008) ....................................................... 4, 21

v

*Singleton v. Wulff,*
    428 U.S. 106 (1976)...................................................................... 33

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n,*
    511 F.3d 1132 (Fed. Cir. 2007)…. .............................................. 5

*Spansion, Inc. v. Int'l Trade Comm'n,*
    629 F.3d 1331 (Fed. Cir. 2010) ............................................. 25

*Tecsec, Inc. v. IBM Corp.,*
    No. 2012-1415 (Fed. Cir. Oct. 2, 2013) ..................................... 7

*Textron Innovations Inc. v. Am. Eurocopter Corp.,*
    498 Fed.Appx. 23 (Fed. Cir. 2012).................................... 17, 18

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ............................................4-5

## Rules

Fed. Cir. R. 47.5(b) ........................................................................ vii

### SUPPLEMENTAL STATEMENT OF RELATED CASES

In addition to the Statement of Related Cases in Plaintiff-Appellant Bose Corporation's ("Bose's") Main Brief ("Blue Brief"), Bose understands that the issue of indirect infringement was raised in petitions for rehearing *en banc* in *Commil USA, LLC v. Cisco Systems, Inc.*, which petitions were denied on October 25, 2013.   720 F.3d 1361 (Fed. Cir. 2013), *reh'g denied,* No. 2012-1042, ECF Dkt. Nos. 84-85 (Oct. 25, 2013) (denying petitions for rehearing).

In the event that the Supreme Court grants *certiorari*, the Court's rulings on indirect infringement could affect the indirect infringement issue in this case, and thus, under Fed. Cir. R. 47.5(b), the *Commil* case could be a related case.

## SUMMARY OF THE REPLY

Appellees attempt to defend the district court's construction of *interface* by continuing to distort the intrinsic record—the claims, specification, and prosecution history—as they did below. Because the intrinsic evidence shows that *interface* does not require a digital-to-analog ("D/A") converter, this Court should hold that the district court erred in adopting such a narrow construction. The extrinsic evidence further undercuts that construction.

Appellees also attempt to support the district court's ***derivative*** construction of *interface unit/device/module* by arguing that the singular phrasing in the court's construction—"***a*** structure that include an interface"— requires that *unit/device/module* must be construed to require a "singularly physical"—discrete—structure. Because the claims are broad enough to encompass an interface having multiple components (*i.e.*, a non-discrete structure)—as the Appellees themselves have recognized—and because there is nothing otherwise in the intrinsic record that limits *interface unit/device/module* to a particular physical form of the interface, this Court should hold that "a structure that includes an interface" does not require a "singularly physical" structure, and reverse the grant of summary judgment as to Appellees' Common Products.

1

This Court should also reject Appellees' alternative ground for affirmance because genuine issues of material fact remain as to their knowledge or willful blindness of their infringement.  Contrary to Appellees' argument, Bose was not required to prove that Appellees "believed" the '765 patent was valid.  On the record presented, the requisite intent for finding contributory infringement is presumed.  Because Appellees completely fail to address this issue in their briefing, and because there are hotly contested factual disputes relating to Appellees' alleged reliance on opinions of counsel, a reasonable jury could find that Appellees had the intent necessary to support a finding of inducement or contributory infringement.  Thus, this Court should reverse summary judgment as to the iW1 product, and deny Appellees' alternate grounds for relief.

# REPLY ARGUMENT

## I. The *Interface* Should Be Construed To Not Require A Digital-To-Analog ("D/A") Converter

Appellees concede, as they must, that Bose's proposed constructions for *interface* cover both embodiments in the specification. (Red Br. at 7.) The Figure 1 embodiment corresponds to Bose's SoundDock® product (*see* Blue Br. at 3, 6, 21-22), and nowhere do Appellees dispute that. Appellees assert, however, that after Bose launched its SoundDock product, Bose "tried to rewrite its claims" to cover the product but "erred in its efforts" and instead wrote claims that only covered the Figure 2 embodiment. (Red Br. at 25.) The argument is plainly incorrect. It makes no sense that Bose tried, but "erred," to cover its new flagship product, when nothing compelled Bose to narrow the claims.

### A. Appellees Implicitly Concede That The Claims Support A Construction Of *Interface* That Does Not Require A D/A Converter

Bose explained how the claims themselves support a broader construction of *interface*; one that does not require the *interface* to convert the audio signal from digital to analog form. (Blue Br. at 30-31.) Nowhere do Appellees disagree; they implicitly concede the point, but call it "irrelevant." (Red Br. at 42.)

### B. The Specification Does Not Support The District Court's Construction

#### 1. The Specification Demonstrates That The Preferred Embodiment Was Not Intended To Be Limiting

Appellees argue that "this Court frequently approves claim constructions informed by the specification," citing *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306 (Fed. Cir. 2008).  (Red Br. at 32.)  Bose agrees, and notes that *Praxair* is actually contrary to their argument.

The '765 specification uses the term "typically" to describe Figure 2's preferred embodiment.  (A134 (col. 4:60-61):  "There are **typically** three implementations for interface unit 54.")[1]  As this Court held in *Praxair*, "typically" "impl[ies] that the passage describes only the most common embodiment rather than the full scope of the invention." *Id.* at 1323.  Thus, the specification strongly signals that the description of the interface of Figure 2 was not intended to be limiting, just as in *Praxair*.

This Court has repeatedly held that a claim construction that excludes a disclosed embodiment "is rarely, if ever, correct."  *See, e.g., Broadcom Corp. v. Emulex Corp.*, No. 2012-1309 (Fed. Cir. Oct. 7, 2013), slip op. at 11.  Such a construction "would require highly persuasive evidentiary support." *Vitronics*

---

[1] Emphasis added throughout, unless otherwise noted.

4

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). As in *Vitronics*, that evidentiary support is absent in this case.

In response, Appellees cite two inapposite cases: *August Tech. Corp. v. Camek, Ltd.*, 655 F.3d 1278 (Fed. Cir. 2011) and *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132 (Fed. Cir. 2007). (Red Br. at 33-34.) In *August*, other unasserted claims in the parent patent covered the excluded embodiments, 655 F.3d at 1285, unlike here, where under the district court's constructions, no claim covers the Figure 1 embodiment. In *Sinorgchem*, the specification included an express definition of the disputed claim term, and one example out of 21 fell outside that express definition when a "complex calculation" was performed. 511 F.3d at 1136-39. Those facts are not present here.[2]

### 2.     The Figure 1 Embodiment *Does* Include An "Interface"

Appellees also incorrectly argue that, because the description of the Figure 1 embodiment does not use the word "interface," that embodiment does not include an *interface*. (Red Br. at 9-11, 31-33.) They then point to the word

---

[2] Appellees also argue that Bose should not be permitted to argue that the claims should be construed to cover the Figure 1 embodiment. (Red Br. at 18, n.4.) Bose does not understand the argument as Appellees themselves acknowledge that Bose raised the issue in its Main brief. (Red Br. at 33; *see also* Blue Br. at 32-36.)

"interface" in connection with Figure 2, such as the "interface connector 52."

*Id.* What they omit, however, is that the Figure 1 embodiment includes a similar

component, which provides an external link to the computer bus 22, just like

"interface connector 52."[3]



Appellees are also incorrect that the specification always uses "interface"

in connection with conversion.  (Red Br. at 13.)  For example, the interface

connector 52 (A134 (col. 4:3)—which Appellees conspicuously omit from their

footnote 2—is simply a connector, which facilitates information transfer.  It

does not convert anything.  (*See* Blue Br. at 16-17.)

### C.    The Prosecution History Does Not Support The District Court's Construction

Appellees continue to improperly crop Bose's May 23, 2006 amendment

and argument (the "Reply") (*compare* Red Br. at 16 *with* Blue Br. at 19-20).

---

[3] A patent need not use the word "interface" to disclose an "interface."
*See Pozen Inc. v. Par Pharm., Inc.*, 696 F.3d 1151, 1166-67 (Fed. Cir. 2012).

6

When read in context, the thrust of the Reply was on the added remote control limitation, which distinguished the cited references. (A274, 276-77, 282-86.) The added *interface* simply provided a path for the remote control signal. It did not distinguish any art, and the Reply makes no mention of the *interface* performing any conversion. (A282-84: "Claim 80 also now requires 'a remote control configured to produce at least a first control signal … [which is] received by the control circuitry and ***transmitted to the audio source device via the interface*.'") Thus, Bose did not "clearly and unmistakably limit[] [the] claims" to an interface that requires a D/A converter. *Tecsec, Inc. v. IBM Corp.*, No. 2012-1415 (Fed. Cir. Oct. 2, 2013), slip op. at 17-18.

This is corroborated by the Examiner interview summary filed that very same day.[4] The entire focus of the interview was the addition of the remote control, with not a single word relating to the interface:

> The attorneys noted that the Contois and Katz references failed to disclose or suggest, inter alia, the remote control as defined in claim 80, 94 and the claims dependent thereon, or the novel combinations set forth in claims 117, 122 and 124 and the claims dependent thereon. It was observed that while neither reference disclosed a remote control, the most that might be suggested would be a remote control for controlling the Contois computer.

---

[4] The Reply was faxed to the PTO on May 23, 2006 at 5:37 pm. (A288-89.)

7

(A288-89.)

Appellees' discussion of Kataoka is also incorrect. (Red Br. at 36.) The "connection interface 201," which the Examiner cited as meeting the *interface device* limitation, is merely a connector in the portable device for a cable that connects to a similar interface in the main device. (A1816, reproduced below.) It does not convert anything. Instead, D/A conversion is performed by the separate "decoder 204." (A1839 (col. 13:37-39): "the decoder 204 … convert[s] the data into analog video/audio signals.")



FIG. 1

Appellees, like the district court, also incorrectly treat the phrase "said interface device comprising a digital to analog converter" in original claim 2 as ***defining*** the term *interface*. (Red Br. at 34-35.)[5] Since original claims 1 and 2 were cancelled following a restriction requirement and before any examination, they are irrelevant here. (Blue Br. at 37.) Appellees do not actually disagree, but they assert it "misses the point" and assert two unsupported arguments. (Red Br. at 34.)

First, they argue that claim 2 was definitional because it was a dependent claim and had no further dependent claims. (Red Br. at 35.) If so, subsequent prosecution would undercut their construction of *interface*. Specifically, when original claim 80 was amended to include "interface," Bose also added dependent claim 108, which recited a particular *interface*: "The audio reproduction system of claim 80 wherein the interface comprises ***an electrical connector***." (A278.) Since claim 108 had no dependent claims, under Appellees' theory, claim 108 defined *interface* as "an electrical connector."

Second, Appellees argue that original claim 2 is definitional since the limitations do not appear in two different claims. (Red Br. at 35.) But that is

_____

[5] Appellees' description of original claim 2 at page 15 of their brief is incorrect. The claim says the "interface device" includes a D/A converter, not the "interface."

9

plainly not the law.  *See, e.g., Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").

### D.    Appellees' Arguments About Claims 24 And 29 Are Unavailing

#### 1.    Claim 24 Is Not "Fatally Defective"

Claim 24 recites that "the audio source device is configured to transmit an analog representations of the respective music files to the sound reproduction device via the interface."  This confirms that the *interface* is not required to include a D/A converter, because the audio source device is configured to transmit the files in analog form to begin with.

Appellees assert that claim 24 is "a fatally defective mistake, on its face" because the claim refers to the "sound reproduction device," and claim 1 (from which it depends) does not recite that element.  (Red Br. at 43.)  But the "sound reproduction device" is undoubtedly the system's component that includes the speaker.  It could not possibly mean anything else.  The specification expressly describes the "sound reproduction device" as the component that includes the speaker (*e.g.*, A98 (Abstract); A133 (col. 1:26-28, 1:39-41)), and other claims define it as such too (*e.g.*, claims 25, 35 and 37).  Thus, claim 24 is not indefinite.  *See Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005)

("When a harmless error in a patent is not subject to reasonable debate, it can be corrected by the court").

Moreover, Appellees never before had a problem understanding claim 24. In both their reexamination request and their invalidity expert report, Appellees understood that the claim referred to audio signals sent to the system component having the speaker.  (*E.g.,* A6595, 6663, 6821; A6549, 6563-64.)  And Appellees never tried to invalidate claim 24 on any §112 ground in the district court.  (*See* A6520-23, 6539-42.)

Appellees' further argument that the phrase "via the interface" in claim 24 means the *interface* converts (or translates) the data (Red Br. at 43) makes no sense.  The claim requires the audio source device be ***"configured to transmit"*** analog audio.  If "via the interface" meant D/A conversion, the requirement to configure the audio source device to transmit analog audio would be surplusage.

Finally, while the patentee's mis-citation to the application's support for claim 24 (A165) was obviously incorrect, that does not lessen its impact on the correct construction of *interface*.  (Red Br. at 43-45.)  Claim 24 is directed to the structure of the audio source device, but the referenced sentence has nothing to do with that device.  Claim 24 is amply supported by the specification, for

example, Figure 1 depicts a computer having a sound card that produces analog audio (A163, lines 4-7, 18-20).

### 2. Claim 29 Does Not Support Appellees' Argument

Appellees' arguments with respect to claim 29 are no more persuasive. Claim 29 depends from claim 25 and requires that "the music storage device comprises circuitry for converting a music file to audible sound." Notably, claim 29 actually recites **converting** a **music file,** which is indisputably in digital form. Thus, Appellees' attempt to argue that the claim could refer to simply **moving** the music file (Red Br. at 45-46) is unavailing.

The only type of "converting" of a digital music file that makes any sense in this context is D/A conversion. Appellees assert that D/A conversion takes place in the "interface unit 52" (*id*.), but that cannot possibly be correct because the interface unit is not a "music storage device." Instead, the claim can **only** be referring to the Figure 1 embodiment, which discloses a "music storage device" (the computer) having a D/A converter (the sound card).

Finally, Appellee's discussion of the prosecution history, which only refers to a March 7, 2006 Amendment filed before the March 22, 2006 Office Action, is misleadingly incomplete. (Red Br. at 46-47.) In the May 23, 2006 Reply to the Action, Bose amended application claim 98 to include the term

12

"music storage device" so that it tracked with the ***simultaneous*** amendment to application claim 94 (issued claim 25), which is when the term "music storage device" was first introduced into the claims.  (A276-77.)  In the same Reply, Bose amended claim 95 to recite that "the music storage device comprises a personal computer," which further supports that these claims were intended to cover the Figure 1 embodiment.

### E.   The Extrinsic Evidence Does Not Support The District Court's Construction

#### 1.   The Term *Interface* Is Not Well Recognized To Require Conversion

Appellees are incorrect in their assertion that the term *interface* has an established meaning in the art of requiring ***conversion*** of one type of information to another.  (Red Br. at 13, 31-32.)  The relevant dictionaries support a broad construction which does not require conversion.  (*See, e.g.,* A3092-98 ("A shared boundary between two objects such as devices, systems, or networks, across which information is passed."); A3101-05 ("An electrical connection that permits a peripheral device or communications channel to be attached to a system.").)  The definitions quoted by Appellees are not to the contrary and do not indicate that an *interface* requires conversion.  At most, one of them says that it "***may*** involve code format, speed or other changes as required."  (Red Br. at 31.)

13

Appellees' argument that *interface* is well understood to require conversion is even undercut by the very construction they proposed. It is undisputed that the *interface* transmits control signals as well as audio signals. But the district court's construction requires only that the *interface* convert the audio signals; the control signals need only be "transmit[ted]," (or transferred) as Appellees acknowledge. (Red Br. at 32.) Appellees never explain why their so-called definition that "interface means conversion" applies to one signal but not the other.

### 2. Bose's Prosecution Of A Continuation Application Does Not Support Appellees' Argument

Appellees assert that, because Bose, in prosecuting a continuation application, cancelled a claim that included the term "interface," and added a claim that included the term "connector" (among other different limitations), that means that Bose's constructions of *interface* are incorrect. (Red Br. at 17-18, 36-37.) What Appellees omit, however, is that the amendment was filed on September 23, 2011 (A3688-89, 3705), ***after*** Appellees had completed all of their claim construction briefing, in which they laid out their overly restrictive construction of *interface*. (A25-26 (docket entries 167, 170, 179, 180).) Thus, rather than constituting any alleged admission regarding the construction of

14

*interface*, this prosecution is more reasonably viewed as an attempt to simply avoid being saddled with an unduly narrow construction.

### 3.   The Wave/PC Product Does Not Support Appellees' Argument

Appellees' lengthy discussion of the two different configurations of cables used with the Wave/PC product (Red Br. at 37-41), does not help their argument.  (*See* Blue Br. at 11-16.)  Curiously, Appellees contend that the "interface is also described in [Bose] development documents."  (Red Br. at 39.)  But the very documents that they cite only use the term "interface" in connection with the configuration corresponding to the Figure 1 embodiment.  (A1990 ("The MediaWave unit uses serial communications and analog audio ***to interface to*** the host computer"); A2144 ("The ***interface*** shall consist of three wires … using RS232 electrical specs.").)  Although both documents also describe the Figure 2 embodiment—the "USB dongle"—neither calls that configuration an "interface."

### 4.   Other Extrinsic Evidence Also Does Not Support Appellees

Appellees' response regarding the arguments they made about the term *interface* in the reexamination (*see* Blue Br. at 40), constitutes an admission that

the broadest reasonable construction **"*consistent with the specification*"** does not require a D/A converter. (Red Br. at 41-42.)

With respect to the expert declarations submitted by Dr. Beckmann (A3107-09; A3514-17), Appellees misunderstand *Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*, 540 F.3d 1137 (Fed. Cir. 2008). (Red Br. at 41.) Dr. Beckmann's declarations do not set forth his subjective intent regarding what he wanted the claims to cover, like the subject testimony in *Howmedica* (at 1346-47), but rather, these provide expert testimony from the perspective of one skilled in the art, which *Howmedica* acknowledges is proper (at 1347, n.5).

## II. *Interface Unit/Device/Module* Should Not Have Been Construed To Require A "Singularly Physical" Structure

### A. The Issue On This Limitation Is One Of Derivative Claim Construction

As Bose explained, the district court initially rejected Appellee's argument that *interface unit/device/module* had to be "a structure" that was "discrete," but later, when ruling on summary judgment, further interpreted its construction as requiring something "singularly physical." (Blue Br. at 23.) This Court has used the term "derivative construction" to describe a court's further interpretation of a claim construction; it *is* a form of claim construction, governed by the same principles as and reviewable by this Court like any other

16

construction. *Advanced Fiber Tech. Trust v. J&L Fiber Serv., Inc.*, 674 F.3d

1365, 1373 (Fed. Cir. 2012); *see also Cordis Corp. v. Boston Scientific Corp.*,

658 F.3d 1347, 1355-56 (Fed. Cir. 2011); *Edwards Lifesciences LLC v. Cook

Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009).[6]

## B.    The Intrinsic Record Does Not Support The District Court's Derivative Claim Construction

Appellees incorrectly rely on the singular phrasing in the district court's

construction—"*a* structure"—to conclude that "a structure that includes an

interface" must be a single, unitary structure.[7] (Red Br. at 48.) But that singular

phrasing is not dispositive. The disputed claim terms in *Textron*, *Cross Med.*,

and *CCS Fitness* were also each phrased in the singular, yet this Court

---

[6] Appellees' waiver argument (Red Br. at 47) is off base. Bose presents here the same argument it presented below—that the district court's construction of *interface unit/device/module* did not require a "discrete" structure. (A6355-63; A6462-69.) Because the district court's eventual interpretation aligned with Appellees' originally proposed construction, which Bose opposed, Bose preserved the issue for appeal. *See Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346-47 (Fed. Cir. 2001). Appellees have not shown that they or the district court lacked notice or an opportunity to address Bose's arguments. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362-63 (Fed. Cir. 1999).

[7] The plain meaning of the district court's construction—"a **structure** that includes the interface" may be an arrangement of parts. *See* http://dictionary.reference.com/browse/structure (defining "structure" as "an arrangement of parts, elements, or constituents" and "anything composed of parts arranged together in some way"). (A6360, n.9.)

concluded that the terms were not limited to a unitary structure.[8]  (Blue Br. at

43-44.)  Unable to distinguish those cases, Appellees argue that they are

"immaterial" because they are claim construction cases.  (Red Br. at 49.)  Not

so.  *See, e.g., Advanced Fiber*, 674 F.3d at 1373 (describing "derivative

construction").

Like the losing parties in *Textron*, *Cross Med.*, and *CCS Fitness*,

Appellees and the district court here erroneously rely on unitary embodiments in

the specification, including the interface unit in Figures 2 and 3.  (*See* Red Br. at

49-50; A52-54.)  Appellees critically fail to point to anything in the specification

or prosecution history here that **requires** limiting *interface unit/device/module* to

a unitary structure.  Bose certainly never distinguished *interface

unit/device/module* as a "unitary" structure or described that having a "unitary"

structure was important to the invention.

Nor does the claim language require any constraint on the physical form,

unitary or not, of the *interface unit/device/module*.  Defendants assert that the

doctrine of claim differentiation requires that *interface unit/device/module* be

limited to a singular structure because, otherwise, they would have the same

---

[8] *Textron Innovations Inc. v. Am. Eurocopter Corp.*, 498 Fed.Appx. 23, 30
(Fed. Cir. 2012); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,* 424
F.3d 1293, 1309 (Fed. Cir. 2005); *CCS Fitness, Inc. v. Brunswick Corp.*, 288
F.3d 1359, 1367-70 (Fed. Cir. 2002).

scope as the *interface* of claim 1. (Red Br. at 50.) Not so. At least one

distinction is that an *interface unit/device/module* has a physical "structure,"

while claim 1's *interface* need not.[9] Moreover, claim differentiation does not

trump the scope of the claims here. *See Marine Polymer Techs., Inc. v.*

*HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) ("[C]laim differentiation is

'not a hard and fast rule and will be overcome by a contrary construction

dictated by the written description or prosecution history.'" (citation omitted)).

### C. Appellees And Their Expert Both Understood That *Interface Unit/Device/Module* Are Not Inherently Unitary Structures

Even Appellees' own statements confirm that *interface*

*unit/device/module* are not inherently singular structures as Appellees now

argue. (Red Br. at 49.) In its reexamination request, SDI asserted that the

*interface* could be divided into multiple parts: "There is nothing in the claim

that would prevent the interface from being located at least partially with[in] the

audio source device, in addition to being within the enclosure." (A6970.) SDI

applied this construction to claims 1, 25, 35, and 37. (A6970; A6975; A6978;

---

[9] *See also* claim 21, which recites that the *interface* of claim 1 "comprises a physical interface configured to operably couple the audio source device with the powered speaker" (A139), suggesting that the *interface* of claim 1 need not be physical.

A6980.)  Thus, SDI argued that an *interface unit/device/module* could span

multiple components.

Moreover, after the district court issued its claim construction order,

Appellees' own expert understood that the district court had rejected the

requirement that the structure had to be "discrete:"

> What the Court has identified is—for interface is circuitry
> that performs the two functions that we've discussed.  And now a
> structure that includes that circuitry, I should be able to find a—a—
> a *discrete*—well, *maybe discrete is the wrong word*—a collection
> of—parts that make such a structure.  And that would be something
> identifiable as a unit as a—as a module or as a device to use the
> other terms that are used in the claims.

(A4993.)

### D.    Claim 37 Supports That *Interface Unit/Device/Module* May Be Non-Unitary

Claim 37 expressly contemplates that the *interface module* is not limited

to a singularly physical structure because the *interface module* need only be "at

least partially integrated within the enclosure," suggesting that the rest be could

located elsewhere, *e.g.*, in the computer.  (*See* Blue Br. at 45-47.)  Appellees

assert that Bose "completely fabricated" this argument for appeal.  (Red Br. at

52.)  Bose raised the argument in the summary judgment proceedings (A6359;

A6465), but the district court failed to address it.  Appellees' speculation about

20

what they think the claim was intended to cover (Red Br. at 51), is completely

lacking in record support.

By its plain language, claim 37 permits the *interface module* to be

integrated within multiple components in the system, which is a hybrid of two of

the "typical" implementations of "interface unit 54" expressly described, *i.e.*,

that the unit may be implemented as a circuit board within the computer or

within the sound reproduction device.  (*See* A134-35(col.4:54-col.5:16).)  The

word "typical" signifies that the disclosed embodiments are non-limiting.

*Praxair,* 543 F.3d at 1323.

Because claim 37 is broad enough to encompass such a non-unitary

structure, that claim (and similarly, claims 25 and 35) would cover the Figure 1

embodiment even if *interface* were construed to require a D/A converter.  If so

construed, the D/A portion of the *interface unit/device/module* would correspond

to the sound card 33 in the computer of Figure 1—which indisputably includes a

D/A converter—and the remaining portion would be in the sound reproduction

device.  Thus, the specification supports that sound card 33 (or a similar circuit

board in the computer) could be part of the *interface unit/device/module,*

meaning that the "structure" would extend across multiple components.

That claim 37 was not an original claim (Red Br. at 51-52) is of no moment, particularly where, as here, the original specification disclosed the sound card in the computer and used the word "typically" to describe the interface unit 54.  Thus, claim 37 is fully supported.

### E    Summary Judgment Should Have Been Denied Because Appellees' Common Products Each Include An *Interface Unit/Device/Module*

Appellees concede that for the 143 Common Products, when combined with an iDevice, Bose's assertion of the components that constitute the "non-unitary structure" would meet the district court's construction of *interface*.  (Red Br. at 54.)  But they argue that such combination does not have an *interface device* (claim 35) or *interface module* (claim 37) "because the components that make up what Bose identifies as the interface are located in different devices." (Red Br. at 52.)  As set forth above, this argument must fail because "a structure" may be met by multiple components.

Kaliski's infringement report described in detail that each Common Product/iDevice combination includes components that meet the district court's construction of *interface unit/device/module*:  processor circuitry in the Common Product, the D/A converter in the iDevice, and the 30-pin dock that connects the two.  (*See* Blue Br. at 48-49.)  These components have a logical

connection:  the 30-pin dock is the common port through which signals from the processor circuitry in the Common Product and from the D/A converter in the iDevice are exchanged to operably couple the two devices.  *Id.*  Accordingly, even though the D/A converter is part of the iDevice, it is nonetheless part of "a structure that includes an interface" as construed by the district court.  At minimum, a fact question remains as to whether the combination identified by Bose meets the claims.

This infringement argument is not foreclosed by anything Bose allegedly conceded at the *Markman* hearing either.  (*See* Red Br. at 53 n.8, 56 (citing A3708).)  At the hearing, Bose explained that if the district court adopted ***all*** of Appellees' narrow constructions for the *interface* terms, no claim would cover the Figure 1 embodiment.  (A3708(tr.7:2-5).)  What Appellees intentionally omit is that, at the outset of the hearing, the court elected to hear argument on the *interface* terms ***together***, and it stated that it agreed with Appellees' proposal.[10]  (A3707-08(tr.4:10-20; tr.5:8-13).)  Thus, since the *interface* terms were all addressed together, Bose described the implications of the court adopting ***all*** of Appellees' proposed constructions—including Appellees'

---

[10] Bose has previously criticized Appellees for omitting the district court's statements at page 4 of the *Markman* transcript in connection with this argument.   (A6922-23.)

23

proposed "discrete" limitation that the court later rejected. (A3710(tr.13:10-20).) Without the "discrete" requirement, the Figure 1 embodiment is covered by the claims reciting an *interface unit/device/module,* even under the Appellees' narrow definition of *interface*, just as Bose argued below. (*See* A6355-59.) So too with respect to Appellees' Common Products, which they admit "mirror the Figure 1 Embodiment." (Red Br. at 52, 55-56.)

## III.  Material Fact Issues Exist As To Indirect Infringement

This Court should also reject Appellees' alternative ground for affirmance because genuine issues of disputed material fact remain as to Appellees' intent, *i.e.*, their knowledge or willful blindness of their infringement.

### A.  Indirect Infringement Does Not Require Bose Prove Belief In The Patent's Validity

Appellees contend that Bose must prove that Appellees "believed" the '765 patent was valid. (Red Br. at 57-58.) This Court expressly rejected that logic in *Commil USA, LLC v. Cisco Systems, Inc.*: "Nor do we 'include a belief in patent validity as a criterion of infringement.'" 720 F.3d 1361, 1369 n.1 (Fed. Cir. 2013). Although a professed invalidity belief may be relevant, it cannot compel summary judgment, since a jury can reject it. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2:07-CV-00331, 2013 WL 4458754, at *6 (D. Nev. Aug. 16, 2013) (upholding inducement verdict despite testimony that defendant "was

skeptical as to [patent's] validity based on [defendant's] knowledge of prior art").

**B.    Appellees' Intent As To Contributory Infringement Is Presumed, Which Appellees Fail To Address**

Appellees ignore Bose's evidence that each defendant had pre-suit knowledge of the patent *and* that the remote control feature in all accused products is a material component of the invention having no substantial non-infringing uses.  (*See* Blue Br. at 63-66; A4939-41; A4894-97.)  In these circumstances, the requisite intent for finding contributory infringement *is presumed*.  (Blue Br. at 63-66 (citing, *e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, 545 U.S. 913, 932 (2005); *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1355 (Fed. Cir. 2010)).) [11]  By entirely failing to respond to this argument or evidence,[12] Appellees have waived any right to challenge it.  Accordingly, on the issue of contributory infringement, this Court should

---

[11] Appellees misleadingly imply that Bose conceded the same evidence of intent is required for inducement and contributory infringement.  (Red Br. at 57.)  The record confirms that, while Bose acknowledged that indirect infringement requires intent, Bose explained that intent as to contributory infringement is presumed on this record.  (A6451.)

[12] Instead, Appellees focus exclusively on their alleged reliance on opinions of counsel and citations to inducement cases, where contributory infringement was not at issue.  (Red Br. at 57-61.)

25

reverse summary judgment as to the iW1 product, and deny Appellees' alternate ground of relief.

## C. Genuine Issues Of Disputed Material Fact Remain Regarding Induced Infringement

Appellees also incorrectly assert that Bose failed to present evidence sufficient to prove induced infringement. On the evidence introduced, a reasonable jury could conclude that each Appellee either knew or was willfully blind as to its infringement.

### 1. Evidence Of SDI's Intent To Induce Infringement

Appellees incorrectly claim that Bose did not "provid[e] positive evidence (either direct or circumstantial) concerning SDI's intent." (Red Br. at 61.) SDI indisputably knew of the '765 patent and Bose's infringement allegations many months before suit. (A4939.) As to all of SDI's accused products—not just the iW1—Bose showed that SDI actively encouraged its customers to infringe the patent, as confirmed by product manuals, brochures, and packaging. (A4760-62 (citing abundant record evidence); *see also, e.g.,* A5007 (brochure); A5025 (Common Product manual); A5204 (iW1 manual); A5223 (packaging); A5239 (tr.238:4-10).) Continuing to sell its products with instructions to customers to combine them with iPods/iPhones creates a triable issue on induced

26

infringement, even after *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct.
2060 (2011). *See Advanced Software Design Corp. v. Fiserv, Inc.,* 641 F.3d
1368, 1376 (Fed. Cir. 2011).

SDI's only competing evidence is its supposed reliance on an invalidity
opinion. (Red Br. at 61-65.) But SDI did not offer the opinion into evidence.
The record is thus silent as to its reasoning, merits, and conclusions. SDI
implicitly concedes that an opinion may be found incompetent. (Red Br. at 58;
*see also* Blue Br. at 57-59.) Here, because SDI intentionally **withheld** the
opinion, no positive inferences can be drawn regarding its competency.
Drawing all reasonable inferences in Bose's favor, one could conclude that it
was bad for SDI.

Nor was there any **admissible** evidence that SDI relied on the opinion.
Bose disputed that SDI's unverified interrogatory response provided any
supporting evidence as to SDI's alleged good-faith reliance, and timely objected
to SDI's reliance on it. (A4756-57; A6503-04.)[13] SDI's new response on appeal
is unavailing. (Red Br. at 61, n.10 (citing California case for proposition that an

---

[13] Appellees imply that the district found that Bose waived the objection.
(Red Br. at 61, n.10). Not so. Appellees moved to strike Bose's post-hearing
memorandum, but the court denied that motion. (A6903). Appellees then filed
a response, in which SDI failed to respond to Bose's objection to the unverified
interrogatory response. (A6511-19.)

attorney may satisfy the verification requirement).)  In the First Circuit, an

unverified response is insufficient to support summary judgment.  *Garside v.*

*Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990); *Goguen v. Textron, Inc.*,

234 F.R.D. 13, 16-17 (D. Mass. 2006).

SDI's argument that Bose had an "obligation" to challenge the opinion's

competency (Red Br. at 62) is likewise misplaced.  A "plaintiff must present

affirmative evidence in order to defeat a ***properly supported*** motion for

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257

(1986).  Plaintiffs need not challenge evidence which the defendant does not

present.  *See Giannullo v. City of New York,* 322 F.3d 139, 140-41 & n.2 (2d

Cir. 2003) (reversing summary judgment where defendant asserted events

justified its actions but did not present evidence of those events).  If this case

proceeds to trial and SDI introduces the opinion, Bose could then challenge its

competency.  Here, Bose had no such opportunity.[14]

SDI tries to make up for the evidentiary gap by attempting to link its

opinion to DPI's and Imation's pending reexamination proceeding.  (Red Br. at

---

[14] SDI's unverified interrogatory response—if admissible—shows that at least five months elapsed before SDI received its opinion. (*See* A4524-25; A6503.)  A reasonable jury could find that at least for this time period SDI had the requisite intent to infringe. (A4760-62 (collecting record evidence); A5004-5223; A5239.)

62, 65.)  But that reexamination is irrelevant to the opinion, as the record reveals

nothing about their similarity beyond that both included Frank and Van der

Muelen.  (A4756.)  Because the contents of SDI's opinion *is completely absent*

*from the record*, one cannot infer that the opinion included the same rationale as

in the reexamination.  On this record a reasonable jury would not have been

required to accept the opinion's competence or the reasonableness of SDI's

alleged reliance on it.[15]

### 2.    Evidence Of Imation's Intent To Induce Infringement

The district court's findings as to Imation's intent are insufficient for an

alternate ground of affirmance.  Imation admits that it became aware of the '765

patent and Bose's infringement allegations in December 2008.  (A56-57; Red

Br. at 21 (citing A4746).)  Still, Imation actively encouraged its customers to

infringe the '765 patent by combining the accused products with audio source

devices, like an iPod, iPhone, or iPad through, *e.g.*, its user manuals and product

packaging.  (A4764-65 (citing abundant record evidence); *see also*, *e.g.*, A5273

---

[15] Equally irrelevant is SDI's reliance on testimony from Bose's damages
expert.  Mr. Dansky is not a "party-opponent" as Appellees assert without
support, and he did not base his opinion on SDI believing the '765 patent was
invalid—his damages analysis properly considered a hypothetical negotiation
assuming the patent was valid and infringed.  In deposition, Mr. Dansky merely
speculated on SDI's bargaining position when it offered to license the patent for
up to $1 million.  (A4533-35.)

(brochure); A5285 (product manual); A5222 (product packaging).)  Imation confirmed that its packaging intended to convey to users that doing so is one of the products' "primary uses."  (A5526-28.)  This evidence is sufficient for inducement.  *See Advanced Software Design*, 641 F.3d at 1376.

No evidence suggests Imation **relied on** any opinion of counsel claiming the patent is invalid.  (*See* Red Br. at 22 (citing no support).)  To the contrary, Imation's in-house lawyer who supposedly received the opinion testified that he could not recall whether he agreed or disagreed with it.  Nor could he recall ever sharing it with anyone else at Imation.  Rather, he simply put the opinion in his file.  (A5513-14.)

In declining to grant summary judgment on this issue, the district court acknowledged the fact dispute as to Imation's supposed reliance.  (A57 ("**Imation claims** to have received oral advice along with a written opinion from Fitzgerald that the products did not infringe, and that Imation relied on this opinion.").)[16]  Imation also argues that it relied on post-suit conversations with its litigation counsel, Matthew Himich, even though Imation's corporate representative testified unequivocally that Imation did **not** rely on Mr. Himich.

---

[16] Imation also did not even seek an opinion for months after becoming aware of the '765 patent, during which time there is no evidence it altered its products or otherwise tried to avoid infringement.  (Red Br. at 21 (admitting notice in Dec. 2008); A4444 (dating opinion of counsel in June 2009).)

(A5515.)  Similarly, Imation now claims that it relied on the ongoing

reexamination proceedings, but cites only to expressly disputed factual

assertions.  (Red Br. 67 (citing A4743-45; 4750).)

Finally, Imation claims to have reached its invalidity belief before

receiving any opinion (Red Br. at 21, 66-67), but the evidence is hotly contested

as to the existence and reasonableness of that belief.  (A4424-25 (testifying that

unspecified Imation employee stated "the claims *must be* invalid because there

*must be* prior art that shows something similar").)  That alone is nothing more

than a wish and a prayer and if anything, suggests Imation was willfully blind as

to its infringement.  Because all reasonable inferences must be drawn in Bose's

favor at summary judgment, this evidence certainly does not support summary

judgment in Imation's favor.

### 3.    Evidence Of DPI's Intent To Induce Infringement

The district court's findings as to DPI's intent are also insufficient for an

alternate ground of affirmance.  DPI became aware of the '765 patent and

Bose's infringement allegations "late 2008 or early 2009," and continued selling

its accused products and encouraging its customers to infringe.  (A57; A4746.)

DPI advertises that the accused products can be combined with an iPod, iPhone,

or iPad, and instructs its customers accordingly.  (A4767-68 (citing record

31

evidence); *see also*, *e.g.*, A5543 (brochure); A5560 (manual); A5221 (packaging).)  DPI's CEO confirmed that one of the intended functions is to allow the customer to couple an iPod to the dock and play music through the speaker, and he admitted that DPI instructs its customers how to play music via the dock with an iDevice.  (A5805-07.)  This evidence is sufficient for inducement.

DPI claims it received an oral opinion from Mr. Himich (also one of DPI's trial counsel), stating the patent was invalid.  (A5811-14.)  DPI purportedly received this opinion over two short phone conversations, but DPI's CEO admitted he did not understand the opinion.  (*Id.*)  In fact, whether and when DPI received an opinion and relied on it are hotly disputed fact questions, because Mr. Himich testified that he could not have provided his opinion until the USPTO issued its first office action on the reexamination request in January 2010.  (A58; A5838; A4224-4238.)

In declining to grant summary judgment on this issue, the district court acknowledged the fact dispute as to whether Himich gave DPI a legal opinion, and whether DPI relied on it.  (A58.)  And, like Imation, DPI claims to also have relied on the pending reexamination proceedings, but its cited evidence is also disputed.  (Red Br. at 68 (citing A4742-45.)  This record, including an alleged

undated and unrecorded oral opinion—the contents of which the recipient does not remember, regarding issues he did not understand—suggests DPI was also willfully blind as to its infringement. It certainly cannot possibly support summary judgment in DPI's favor, when all reasonable inferences are to be drawn in Bose's favor.[17]

### D.  Bose Has Not Waived Any Issue By Appealing The District Court's Summary Judgment Ruling

Appellees wrongly claim that Bose "chose to appeal" its loss on 143 of the 144 accused products based on claim construction, rather than pursue a trial on alleged "future infringement" for the remaining iW1 product. (Red Br. at 26, 69.) But any triable infringement issue as to SDI's iW1 product was foreclosed by the district court's ruling on summary judgment as to that product, leaving an appeal Bose's only option.

Bose squarely raised the issue below, and since it was passed upon, Bose preserved it for appeal. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). In post-

---

[17] The record also would not require a jury to accept that DPI supposedly reached a good faith belief of non-infringement based on a discussion with a DPI engineer, Lee Ka Wing, who offered a non-infringement position (that an iDevice cannot be a computer) that bore no relation to the asserted claims and that DPI did not even pursue in litigation. (A57-58.) Moreover, the record contains no evidence that DPI reached its supposed invalidity belief for at least nine months after receiving notice of the patent and Bose's allegations. (A4497.)

33

hearing briefing, which the district court accepted (A6903 (denying Appellees'

Motion to Strike)), Bose explained that, if the court granted Appellees' summary

judgment motion, "the Court will preclude Bose from ever challenging

Appellees' invalidity defenses before a jury and preclude Bose from ever

holding Appellees liable for their indirect infringement, even though a jury

could very well reject the Appellees' invalidity claims." *Id.* Despite that

argument, the district court ***granted*** summary judgment, rejecting the argument,

and foreclosing any possibility of trial on infringement of the iW1.

## IV.   CONCLUSION

The Court should correct the district court's claim construction errors,

reverse the grant of summary judgment, and remand for further proceedings.

Dated:  October 28, 2013          By  */s/ Mark J. Hebert*
                                        Mark J. Hebert
                                        Jolynn M. Lussier
                                        FISH & RICHARDSON P.C.
                                        One Marina Park Drive
                                        Boston, MA  02210-1878

                                        Attorneys for Plaintiff-Appellant Bose
                                        Corporation

# CERTIFICATE OF SERVICE

I certify that on October 28, 2013, a true and correct copy of the foregoing Reply Brief of Plaintiff-Appellant was electronically filed with the Clerk of this Court using the CM/ECF System, and a copy was also sent electronically via the court's CM/ECF system to counsel for Defendants-Appellees SDI Technologies, Inc., Imation Corp., Memorex Products, Inc., and DPI, Inc.:

Matthew B. Lowrie
Aaron W. Moore
FOLEY & Lardner, LLP
111 Huntington Avenue
Boston, MA  02025

David B. Jinkins
Michael L. Nepple
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, MO  63101

_/s/  Mark J. Hebert_____
Mark J. Hebert
Jolynn M. Lussier
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210-1878

Attorneys for Plaintiff-Appellant Bose Corporation

# CERTIFICATE OF COMPLIANCE

The Reply Brief of Plaintiff-Appellant is submitted in accordance with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure.  The Brief contains 6,962 words, as determined by Microsoft Word.


Dated:  October 28, 2013     By */s/  Mark J. Hebert*
                             Mark J. Hebert
                             Jolynn M. Lussier
                             FISH & RICHARDSON P.C.
                             One Marina Park Drive
                             Boston, MA  02210-1878

                             Attorneys for Plaintiff-Appellant Bose Corporation